UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **EQUILON ENTERPRISES LLC d/b/a SHELL OIL PRODUCTS, U.S. AND SEI FUEL SERVICES, INC.** | CIVIL ACTION NO.  SECTION |
| **VERSUS** | MAGISTRATE |
| **BROTHERS LAPALCO, LLC; BROTHERS AVONDALE, LLC; CAROL SUE INVESTMENTS, LLC; AND IMAD FAIEZ HAMDAN** | |

**COMPLAINT FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF**

NOW INTO COURT, through undersigned counsel, come plaintiffs, Equilon Enterprises LLC d/b/a Shell Oil Products U.S. ("Shell") and SEI Fuel Services, Inc. ("SEIF"), and for their Complaint for Temporary Restraining Order, Preliminary and Permanent Injunctive Relief, respectfully aver as follows:

**THE PARTIES**

1.

Plaintiff, Shell, is a corporation organized under the laws of Delaware with its principal place of business in Texas. Therefore, Shell is a citizen of the states of Delaware and Texas.

2.

Plaintiff, SEIF, is a corporation organized under the laws of Texas with its principal place of business in Texas. Therefore, SEIF is a citizen of the state of Texas.

3.

Defendant Brothers Lapalco, LLC ("Brothers Lapalco") is a limited liability company formed in Louisiana, whose member is Hamdan Sons Investments, LLC. The member of

Hamdan Sons Investments, LLC is Imad Faiez Hamdan ("Hamdan"). Hamdan, a natural person of the full age of majority, is a resident, domiciliary, and citizen of Louisiana. Therefore, Brothers Lapalco is a citizen of the state of Louisiana. It owns a retail site in this District that is the subject of the claims asserted in this case.

4.

Defendant Brothers Avondale, LLC ("Brothers Avondale") is a limited liability company formed in Louisiana, whose member is Hamdan Sons Investments, LLC. The member of Hamdan Sons Investments, LLC is Hamdan, a natural person of the full age of majority and a resident, domiciliary, and citizen of Louisiana. Therefore, Brothers Avondale is a citizen of the state of Louisiana. It owns a retail site in this District that is the subject of the claims asserted in this case.

5.

Defendant Carol Sue Investments, LLC ("Carol Sue Investments") is a limited liability company formed in Louisiana, whose member is Hamdan Sons Investments, LLC. The member of Hamdan Sons Investments, LLC is Hamdan, a natural person of the full age of majority and a resident, domiciliary, and citizen of Louisiana. Therefore, Carol Sue Investments is a citizen of the state of Louisiana. It owns a retail site in this District that is the subject of the claims asserted in this case.

6.

Defendant Hamdan is a natural person of the full age of majority and a resident, domiciliary, and citizen of Louisiana. Hamdan resides and is domiciled within this District.

## JURISDICTION

### Diversity Jurisdiction

7.

This Court has jurisdiction pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship as between Plaintiffs, on the one hand, and the Defendants, on the other hand, and, as set forth below, the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

8.

As set forth in the attached Declarations of Angela Davisson, Shell's Compliance Quality Coordinator, and Adam M. Marcus, SEIF's Senior Director of Wholesale Fuels & Zone Operations, attached hereto respectively as Exhibits ("Ex.") A and B, Defendants, in violation and infringement of trademarks owned by Shell, and in violation of their legal and contractual duties to SEIF, have and are selling unbranded non-Shell fuel at sites owned by them and which sites are signed, identified, marked and branded with the Shell trademark.  Davisson Decl. (Ex. A), at ¶2; Marcus Decl. (Ex. B), at ¶¶ 8, 12–15.

9.

Defendants' actions have infringed and diluted the Shell trademarks, undermining their integrity and value and threatening harm and damage to Shell far in excess of $75,000, exclusive of interest and costs.  Defendants' actions have also exposed Plaintiff, SEIF, to the termination of its Wholesale Marketer Agreement ("WMA") with Shell.  Marcus Decl. (Ex. B), at ¶¶14-15, and January 22, 2024 Cease and Desist Letter from Shell to SEIF, Ex. 7 to Marcus Declaration.  The WMA gives SEIF the right to distribute Shell-branded motor fuel and other products to Shell-branded retail sites around the nation and the exclusive right to employ the Shell trademarks and

sell and supply Shell-branded motor fuels at the premises owned by the corporate Defendants. Marcus Decl. (Ex. B), at ¶11. Cancellation of the WMA would cause SEIF to suffer losses of millions of dollars of lost future business resulting from the loss of the right to distribute Shell-branded motor fuel at hundreds of retail sites around the nation, with all attendant and irreparable harm to its business, reputation and good will in the marketplace. Marcus Decl. (Ex. B), at ¶15.

Absent temporary, preliminary, and permanent injunctive relief from this Court ordering the Defendants to cease and desist from selling unbranded non-Shell motor fuel at the relevant sites, their continuing unlawful and wrongful conduct threatens to and will cause damages and harms to both Shell and SEIF far exceeding the jurisdictional minimum of $75,000, exclusive of interest and costs.

**Federal Question Jurisdiction**

10.

This Court also has subject matter jurisdiction under 28 U.S.C. § 1331 in that this case arises under the laws of the United States. Defendants' ongoing promotion of the Shell trademarks and brand at their retail sites, while selling unbranded non-Shell fuel to unsuspecting customers, directly infringes the trademarks owned by Shell and undermines their value and integrity, causing Shell immediate and ongoing irreparable harm. This wrongful conduct further constitutes the blatant false designation of the origin of that fuel. Consumers purchasing fuel at Defendants' stations believe they are purchasing Shell motor fuel, when they are not. This ongoing infringement and deception is a flagrant violation of the Lanham Act, 15 U.S.C. §§ 1114, 1125. Defendants' continued violations of the Lanham Act likewise expose SEIF to the termination of its WMA with Shell, with all attendant losses and irreparable harm both Shell and SEIF. Under the WMA, Shell has demanded that SEIF bring this injunctive action to stop

Defendants' deceptive conduct. *See* demand letter from Shell to SEIF, Ex. 8 to the Marcus Declaration. Shell has joined as a plaintiff herein to assert its claims to enjoin Defendants' ongoing infringement of its trademarks. Defendants' conduct threatens both Shell and SEIF with direct and immediate competitive injury and harm, giving them full standing and right to seek and recover all remedies against Defendants as provided under the Lanham Act, including injunctive relief, recovery of attorneys' fees and costs, treble damages, and all other remedies and recoveries. 15 U.S.C. §§ 1116, 1117.

## VENUE

11.

Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) (1) in that all Defendants are domiciled in Louisiana and one or more of the Defendants resides in and is domiciled within this judicial District. Further, all or substantially all of the acts and events giving rise to this suit occurred in this District.

## FACTUAL ALLEGATIONS

12.

Shell owns the famous Shell trademarks, known to consumers worldwide as synonymous with quality petroleum products sold at Shell marked and branded retail outlets. Each of the named Defendant entities owns a retail site that is signed, identified, marked and branded with the Shell trademarks. Davisson Decl. (Ex. A), at ¶2

13.

Pursuant to its WMA with Shell, SEIF has the right to distribute Shell-branded motor fuel and other products to retailers in Louisiana and many other states around the nation. Marcus Decl. (Ex. B), at ¶11. Pursuant to the WMA, Shell assigned to SEIF the exclusive right to

employ the Shell trademarks at the retail sites it supplies, including the sites owned by Brothers Lapalco, Brothers Avondale, and Carol Sue Investments. *Id.* The WMA obligates SEIF to take actions necessary to protect the integrity of the Shell trademarks and brand at the sites that it supplies. *Id.*

14.

Defendant Brothers Lapalco owns a retail site at 3659 Lapalco Blvd. in Jefferson Parish, Louisiana. It is a party to and fully bound to all obligations of the Branding and Product Purchase Commitment Agreement ("Branding Agreement") with Lavigne Baker Petroleum, LLC ("Lavigne Baker"), Ex. 1 to the Marcus Declaration, pursuant to which SEIF distributes Shell-branded motor fuel to the Brothers Lapalco retail site. Marcus Decl. (Ex. B), at ¶¶ 2, 7. Defendant Brothers Avondale owns a retail site at 2901 US Highway 90 in Jefferson Parish, Louisiana. It is a party to and fully bound to all obligations of the Branding and Product Purchase Agreement ("Branding Agreement") with Lavigne Baker, Ex. 2 to the Marcus Declaration, pursuant to which SEIF distributes Shell-branded motor fuel to the Brothers Avondale retail site. Marcus Decl. (Ex. B), at ¶¶3, 7. Defendant Carol Sue Investments, LLC, the successor to Brothers Carol Sue, LLC, owns a retail site at 2000 Carol Sue Avenue in Jefferson Parish, Louisiana. That site is subject to the Branding and Product Purchase Commitment Agreement ("Branding Agreement") with Lavigne Baker, Ex. 3 to the Marcus Declaration, pursuant to which SEIF distributes Shell-branded motor fuel to the Carol Sue Investments retail site. Marcus Decl. (Ex. B), at ¶¶ 4, 7. Each of these Branding Agreements is duly recorded in the mortgage and conveyance records of Jefferson Parish, Louisiana, as reflected in the attached recordation stamps and notices.

15.

Each Branding Agreement, in relevant part, mandates the sale of exclusively Shell-branded motor fuel at the retail sites owned by Brothers Lapalco, Brothers Avondale, and Carol Sue Investments ("the Brand Covenant"). *See* Marcus Decl. (Ex. B), at ¶8 and Exs. 1, 2, and 3 thereto at Articles 1.1 (a) and 2.1 (a) and (b). The Branding Agreements prohibit the operation or use of the respective sites in any manner that violates the Brand Covenant. Article 2.1 (b). The Branding Agreements likewise provide that the Branding Covenant "runs with the land" and inures to, binds and may be enforced against all successors and assigns of the retail sites to which they pertain. *Id.* The Branding Agreements further expressly obligate each Defendant to include the Brand Covenant in any convenance or assignment of the Premises, and to require any such successor/assignee to assume all obligations under the Brand Covenant. *Id.* In accordance with the Branding Agreements and related agreements, the retail sites owned by each respective Defendant are signed, identified, marked and branded with the Shell trademark. *See* Marcus Decl. (Ex. B), at ¶8; photos attached to Shell Cease and Desist demand letter to SEIF, Ex. 7 to Marcus Decl. (Ex. B).

16.

Contemporaneously with the Branding Agreements, Brothers Lapalco, Brothers Avondale, and the predecessor to Carol Sue Investments executed Contracts of Sale (Branded) with Lavigne Baker, requiring the purchase from SEIF of minimum annual volumes of Shell-branded motor fuel at the retail sites. Like the Branding Agreements, the Contracts of Sale (Branded) expressly prohibit the sale of unbranded non-Shell fuel at those sites. Marcus Decl. (Ex. B), at ¶¶5, 9. *See* paragraphs 3 and 14 of the Contracts of Sale (Branded), attached as Exs. 4, 5, and 6 to the Marcus Declaration. Those contracts are likewise recorded in the mortgage and

conveyance records of Jefferson Parish, as reflected in attached notices of recordation and file stamps.

17.

Effective July 16, 2015, Lavigne Baker assigned to SEIF all of Lavigne Baker's rights, title and interests under the Branding Agreements and Contracts of Sale (Branded) identified in the preceding paragraphs and attached hereto.  Marcus Decl. (Ex. B), at ¶ 6.  SEIF therefore stands in the shoes of Lavigne Baker with full right, cause, interest and entitlement to enforce all obligations under the Branding Agreements and Contracts of Sale (Branded).

18.

Pursuant to Article 2.1 (a) of the Branding Agreements, the Branding Agreements and Brand Covenants were automatically renewed and extended through December 31, 2027 as to Brothers Lapalco and Brothers Avondale, and through October 30, 2028 as to Carol Sue Investments.   Pursuant to Paragraph 1 (b) of the Contracts of Sale (Branded), those contracts were likewise automatically renewed and extended.  Marcus Decl. (Ex. B), at ¶10.

19.

Shell has recently discovered that Defendants have sold and are selling unbranded non-Shell motor fuel to consumers at their retail sites, even though all of these sites are signed, identified, marked and branded with the Shell trademark.  Davisson Decl. (Ex. A), at ¶2-3; Marcus Decl. (Ex. B), at ¶12.  These actions have continued notwithstanding repeated demands to cease and desist made by both Shell and SEIF.  *Id.*  By deceiving consumers into purchasing unbranded, non-Shell fuel at sites while simultaneously promoting the sites under the Shell trademarks and brand, Defendants have and are continuing to infringe Shell's trademarks and falsely designate the origin of the product they are selling, in contravention of the Lanham Act,

15 U.S.C. §§ 1114, 1125. Defendants' wrongful acts further contravene the Brand Covenants and Contracts of Sale (Branded) governing the three sites supplied by SEIF, all of which prohibit the sale of unbranded non-Shell motor fuel at those sites. *Id.*

20.

Defendants' ongoing infringement of the Shell trademarks exposes it to immediate and ongoing irreparable harm by undermining the value and integrity of its trademarks, entitling it to temporary, preliminary and injunctive relief under the Lanham Act and attorneys' fees, costs and other recoveries.

21.

Shell has further demanded that SEIF take necessary steps to cause Defendants to cease and desist from their wrongful conduct, on threat of terminating SEIF's WMA with Shell. Marcus Decl. (Ex. B), at ¶14; Cease and Desist demand letter, Ex. 7 to Marcus Decl. (Ex. B). Pursuant to the WMA, Shell has demanded that SEIF bring the instant injunctive proceeding. *Id;* Shell Letter, ex. 8 to Marcus Decl. (Ex. B). The termination of the WMA would cause SEIF to lose hundreds of distribution contracts and rights nationwide, substantially and irreparably harming its ability to do business and exposing it to millions of dollars of lost future business, with attendant substantial and irreparable harm to its reputation and goodwill in the marketplace. Marcus Decl. (Ex. B), at ¶15. Defendants' ongoing violations of the Branding Covenants, Contracts of Sale (Branded), and violations of the Lanham Act therefore expose SEIF to immediate and ongoing irreparable harm, entitling it to the temporary, preliminary, and permanent injunctive relief sought herein. If Defendants' actions are not restrained and enjoined, the *status quo ante* cannot be restored.

22.

Hamdan is the ultimate controlling member and manager of each Defendant entity. *See* Marcus Decl. (Ex. B), at ¶13. He has deliberately and wrongfully induced and caused his companies to infringe Shell's trademarks, violate their contractual obligations under the Branding Agreements, Brand Covenants, and Contracts of Sale (Branded) with SEIF, and to violate federal law. Hamdan is therefore personally liable for those breaches and wrongful acts under principles of agency, intentional interference with contractual relations, and other legal and equitable principles. Further, as he is in control of and directs the Defendant entities, he is a proper subject of the injunctive relief sought in this Complaint, and he is also liable for Plaintiffs' attorneys' fees costs, and other recoveries under the Lanham Act.

23.

Article 7.3 of the Branding Agreements explicitly provides for and permits the seeking of "any restraining order, temporary injunction and/or permanent injunction (mandatory and/or inhibitory) to compel compliance with this Agreement. . . ." Exs. 1-3 to Marcus Decl. (Ex. B). Paragraph 37 of the Contracts of Sale (Branded) likewise entitles SEIF to "injunctive relief. . . and/or other equitable remedies, as appropriate" to remedy violations of those contracts, and expressly "waive[s] any requirement for the posting of bond in conjunction with [SEIF's] effort to seek equitable remedies." Exs. 4-6 to Marcus Decl. (Ex. B). Paragraph 14(c) of those contracts entitles SEIF to recover its attorneys' fees and costs incurred in remedying Defendants' ongoing wrongful acts. *Id*. The Lanham Act likewise provides for injunctive relief, attorneys' fees, costs, and other remedies for Defendants' infringement of the Shell trademarks and false designation of the origin of the products they are selling. 15 U.S.C. §§ 1114, 1125.

## COUNT I: DEMAND FOR A TEMPORARY RESTRAINING ORDER

24.

Plaintiffs incorporate by reference the allegations of paragraphs 1-23.

25.

Defendants' ongoing deliberate violations of federal law and contractual breaches expose Shell and SEIF to immediate and irreparable harm and injury if Defendants' wrongful conduct is not immediately restrained and enjoined. Defendants' acts are in flagrant violation of the Lanham Act, 15 U.S.C. §§ 1114, 1125, Brand Covenants, and Contracts of Sale (Branded). Shell and SEIF are therefore substantially likely to succeed on the merits. A temporary restraining order is also equitable, fair, and in the public interest in order to protect unsuspecting consumers from purchasing un-branded non-Shell motor fuel at sites where they believe they are purchasing Shell motor fuel. Shell and SEIF are entitled to an immediate order temporarily restraining Defendants, and their respective members, mangers, agents, servants, employees, and any other persons who are in active concert or participation with any of them, from selling unbranded non-Shell motor fuel at their retail sites that are the subject of this suit, pending a hearing on a preliminary injunction.

To ensure compliance with the Court's temporary restraining order, the Court should order Defendants to reconnect the point of sale systems at their retail sites to the Shell credit card system during the pendency of the order. As explained in paragraph 16 of the Marcus Decl. (Ex. B), Paragraph 8 of Defendants' Contracts of Sale (Branded) requires them to connect their point of sale systems ("POS") at their retail sites to Shell's credit card system. Defendants' POS are not currently connected to Shell's credit card system as required, which enables them to purchase non-Shell branded motor fuel from other sources for their retail stores. A court order directing

Defendants to reconnect their POS at their retail sites to Shell's credit card system (as required by Paragraph 8 of Defendants' Contracts of Sale (Branded) with SEIF) would prevent any further purchases of non-Shell branded motor fuel for Defendants' retail sites. That directive would require Defendants' orders for motor fuel for their retail sites that are supplied by SEIF to be made through SEIF (as required by Defendants' Branding Agreements and Contracts of Sale (Branded) with SEIF). That would permit continued monitoring of Defendants' motor fuel purchases and prevent them from purchasing non-Shell branded products from other sources for sale at Defendants' retail sites.

26.

As set forth above, Paragraph 37 of the Contracts of Sale (Branded) entitles SEIF to "injunctive relief. . . and/or other equitable remedies, as appropriate" and expressly "waive[s] any requirement for the posting of bond in conjunction with [SEIF's] effort to seek equitable remedies." Hence, SEIF is entitled to a temporary restraining order without posting a bond. But, to the extent, if any, the Court finds a bond may be required (which it should not), SEIF is prepared to and will post a bond to secure the temporary restraining order as the Court may deem necessary.

Shell and SEIF request expedited consideration of their request for a temporary restraining order at the earliest possible time. SEIF has notified Defendants' counsel, Omer F. Kuebel, III, by e-mail of this demand for a temporary restraining order and provided him with a copy of this pleading, and will also notify him by phone at the earliest possible moment, so that he may appear and be heard at the expedited hearing on the temporary restraining order.

## COUNT II:  DEMAND FOR PRELIMINARY INJUNCTION

27.

Plaintiffs incorporate by reference the allegations of paragraphs 1-26.

28.

Defendants' ongoing infringement of Shell trademarks, false designation of the origin of fuel they are selling at their retail sites, and breaches of the Brand Covenants, Branding Agreements and Contracts of Sale Branded, expose Shell and SEIF to ongoing irreparable harm and injury, including (i) the undermining and devaluation of the Shell trademarks, and (ii) SEIF's loss of distribution rights under the WMA, with attendant massive loss of future business, damage to goodwill, and other irreparable harms that are not compensable through an award of monetary damages.  Preliminary injunctive relief is fair, equitable, and in the public interest in order to protect unsuspecting consumers from purchasing un-branded motor fuel at sites where they believe they are purchasing Shell motor fuel. This Court should therefore preliminarily enjoin Defendants and their respective members, managers, agents, servants, employees, and any other person who is in active concert or participation with any of them, from selling unbranded non-Shell motor fuel at their retail sites pending a trial on the merits.  The Court should also order Defendants to reconnect the point of sale systems at their retail sites to the Shell credit card system, as set forth in the preceding paragraph 25.

## COUNT III:  DEMAND FOR PERMANENT INJUNCTION

29.

Plaintiffs incorporates by reference the allegations of paragraphs 1-28.

30.

Following trial on the merits, this Court should enter judgment permanently enjoining Defendants, and their respective members, mangers, agents, servants, employees, and any other person who is in active concert or participation with any of them, from selling unbranded non-Shell motor fuel at the retail sites owned by them. The Court should also award Plaintiffs their attorneys fees and costs pursuant to 15 U.S.C. § 1117 and Paragraph 14 (c) of the Contracts of Sale (Branded). The permanent injunction should include the same order that Defendants reconnect the point of sale systems at their retail sites to the Shell credit card system, and maintain that connection during the remaining extended terms of the operative Branding Agreements and Contracts of Sale governing their sites.

### COUNT IV:  RESERVATION OF  CLAIMS FOR RECOVERY OF LIQUIDATED AND MONETARY DAMAGES

31.

Article 7.3 of the Branding Agreements mandates arbitration of SEIF's non-injunctive monetary claims arising from or related to breaches of the Branding Agreements. SEIF therefore expressly reserves its rights to seek recovery in the contractually mandated arbitral forum of liquidated damages and other monetary claims for Defendants' breaches of the Brand Covenants and Contracts of Sale Branded and for their violations of federal law. Shell further reserves its rights to amend this Complaint to assert monetary claims for recovery of actual and treble damages under the Lanham Act and other applicable statutes, or, alternatively, to pursue those claims in in a different proceeding. Shell likewise reserves the right to pursue infringement claims as to other sites under Hamdan's control based upon further analysis and information being developed.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray that this Court enter a judgment in their favor and against Defendants, as follows:

(a) Issuing a temporary restraining order, preliminary injunction, and permanent injunction against Defendants enjoining them, and their respective members, managers, agents, servants, employees, and any other person who is in active concert or participation with them, from selling unbranded non-Shell motor fuel at their retail sites and ordering them to reconnect and maintain the connection of their point of sale systems with the Shell credit card system.

(b) Awarding Plaintiffs their costs and attorneys' fees herein; and

(c) Awarding Plaintiffs such other legal, general, and equitable relief as the Court deems fit and proper.

Respectfully submitted,

  /s/ James A. Brown
James A. Brown, T.A. (Bar #14101)
Melanie Derefinko (Bar #37658)
Sheri L. Corales (Bar #37643)
**LISKOW & LEWIS, APLC**
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, LA  70139-5099
Tel:  (504) 581-7979
Fax:  (504) 556-4108
jabrown@liskow.com
mderefinko@liskow.com
scorales@liskow.com

*Attorneys for Plaintiffs, Equilon Enterprises, LLC d/b/a/ Shell Oil Products, U.S. and SEI Fuel Services, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I filed the above and foregoing pleading electronically with the Court's CM/ECF system on March 23, 2024, which will cause a notice of electronic filing to be mailed to all registered users. I further certify that I delivered a copy of the above and foregoing pleading to the following via electronic and/or United States Mail, properly addressed and postage prepaid, on March 23, 2024:

>Omer F. "Rick" Keubel, III
>Locke Lord
>601 Poydras St., Suite 2660
>New Orleans, LA  70130
>Direct Telephone:  (504)558-5155
>rkuebel@lockelord.com

/s/ James A. Brown

Formal citation and service of the Complaint will follow expeditiously, unless waived by Defendants' counsel.

6291737